LESLIE et al. v. BOWERS, Collector of Internal Revenue.

(District Court, S. D. New York. September 22, 1923.)

Internal revenue ⊜7—Commissions paid to individual partner for services by partnership held not "income" of partnership.

Where partners of a selling agency for a group of mills agreed that, in consideration of one of the partners giving up his right to 60 per cent. of the gross receipts, to which he was entitled under the original partnership contract, the partnership would act as selling agent for three of the mills without compensation, the commissions earned thereon to be paid directly to such partner, or his assigns, the commissions paid by the three mills to the family of the partner were not taxable as "income" of the partnership.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

At Law. Action by John C. Leslie and another, surviving copartners of the firm formerly doing business under the name of the Cannon Mills, against Frank K. Bowers, Collector of United States Internal Revenue for the Second District of New York. On defendant's motion to dismiss. Motion denied.

William Hayward, U. S. Atty., and Richard S. Holmes, both of New York City, and H. M. Darling and J. T. Dortch, both of Washington, D. C., for the motion.

Rounds, Schurman & Dwight, of New York City (John G. Milburn, Arthur C. Rounds, and Oscar R. Ewing, all of New York City, of counsel), opposed.

AUGUSTUS N. HAND, District Judge. This action was brought by the surviving members of a copartnership to recover excess profits taxes assessed upon and paid under protest by the copartnership on the business done in 1917.

By contract dated May 1, 1917, James W. Cannon and the plaintiffs agreed that the copartnership between them, entered into June 30, 1916, should be modified; that the firm should continue to act as the selling agent for the group of 13 mills known as the Cannon Mills, but without charging any commission to 3 of the mills, to wit, Cannon Manufacturing Company, Cabarrus Cotton Mills, and Wiscasset Mills Company, or receiving any commission therefor. This instrument of modification further provided:

"That said James W. Cannon may make such arrangement with said last-named mills and each of them for the payment of commissions for the services of said firm as selling agent to him or his assigns, and to such party or parties

as he may designate or may agree upon with said mills, without any accountability to said firm for said commissions, or any part thereof."

In conformity with the foregoing provisions, James W. Cannon, under date of May 1, 1917, contracted with the Cannon Manufacturing Company, the Cabarrus Cotton Mills, and the Wiscasset Mills Company that these companies should pay specified commissions for the continued service of the copartnership as selling agent, but said commissions were to be paid to members of the Cannon family in the proportions set forth in the respective agreements made with the three companies mentioned. The commissions paid by the three companies under these agreements in the year 1917 amounted to $660,257.77, and the additional tax assessed by the Bureau of Internal Revenue against the firm, upon the theory that these sums were earnings of the copartnership, amounted to $396,151.66. This additional tax, with the added penalty, was $423,882.28, to recover which this action was brought.

It may be noted that there was apparently no attempt in this case to devise a scheme to avoid the excess profits tax, since the act imposing such a tax was passed on October 3, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 6336⅜a–6336⅜o–6336¼bb), about five months after the date of the contracts above mentioned. But the real question is not the purpose which the parties had in mind, but what they in terms agreed to do.

The partnership agreed among themselves that the firm should act as selling agents for the three mills in question without compensation. James W. Cannon, by reason of the modified agreement, gave up 60 per cent. of the gross receipts derived from commission upon all the Cannon Mills to which he was entitled under the original contract. The firm secured this 60 per cent. for distribution among the three partners, under the agreement that commissions for acting as selling agents of the three mills in question should not be charged by the firm. Thus commissions for such services were taken out of the partnership receipts. The partnership took nothing from the moneys paid the Cannon family for these services, and, so far as I can see, obtained no enforceable right by reason of the services against any of the three companies.

The railroad decisions relied upon by the defendant to show that the sums paid to the Cannon family were income of the partnership do not govern this case. Rent reserved in a lease by one railroad to another, under which the lessee road is to pay the rental to the stockholders of the lessor, has been held to be income taxable against the lessor. These decisions have treated the payment of the rent to the stockholders as a payment of income really accruing to the lessor, and made only to the stockholders for convenience. Even this reasoning was disapproved by Judge Hough in Rensselaer & S. R. Co. v. Irwin, 249 Fed. at page 727, 161 C. C. A. 636, and by Judge Aldrich in West End St. Ry. Co. v. Malley, 246 Fed. at page 627, 158 C. C. A. 581. But in those cases the lessor road contracted for the payment to its stockholders. Here the copartnership made no contract whatever with the three Cannon corporations, or with the Cannon family. The contracts providing for the payments to the Cannon family were independent of, though

contemporaneous with, the modified agreement of copartnership, and the firm clearly had no claim against the three Cannon Mills in question.

There is another consideration here of some importance. The original partnership agreement of June 30, 1916, which gave James W. Cannon 60 per cent. of the gross commissions from sales before the three partners were to share in the net profits of the firm, resulted from the transfer by Mr. Cannon to the firm of his commission business. This 60 per cent. apparently represented the consideration moving to him for making available a business which had been his. By the modified agreement he gave up this 60 per cent. and enabled the partners to share in the business without this charge, if they would eliminate from the firm receipts the commissions on the three mills in question, while still performing the services. It is by no means certain that, if the commissions on these mills had gone wholly to Mr. Cannon, they should be treated as firm income for the purpose of taxation, since the firm would not share in them. But where, as here, no member of the firm had any interest in them, I cannot see how they can possibly be income. If the arrangement was unfair to stockholders of the three Cannon Mills outside of the Cannon family, that would be a matter for them to object to. In any event, it could not make sums accruing and paid to them part of income of the partnership, merely because the latter rendered the services.

The motion to dismiss is accordingly denied.